No. 25-60108

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

Exxon Mobil Corporation,

*Petitioner*,

v.

Occupational Safety and Health Review Commission; Lori Chavez-
DeRemer, Secretary, U.S. Department of Labor,

*Respondents*.

---

On Petition for Review of an Order of the
Occupational Safety and Health Review Commission

---

## Reply Brief for Petitioner

---

MICAH R. SMITH
RICHARD B. RAILE
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1638
msmith@bakerlaw.com

*Attorneys for Petitioner*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judge of this court may evaluate possible disqualification or recusal.

## A. Petitioner

Exxon Mobil Corporation. Exxon Mobil Corporation has no parent corporation, and no publicly held company owns 10% or more of its stock.

## B. Attorneys for Petitioner

Micah R. Smith
Richard B. Raile
Baker & Hostetler LLP
1050 Connecticut Avenue N.W., Suite 1100
Washington, D.C. 20036

## C. Respondent

Occupational Safety and Health Review Commission
Lori Chavez-DeRemer, Secretary of Labor

## D. Interested Government Agents

Occupational Safety and Health Administration

## E. Attorneys for Respondent

Sheila Eileen Naughton
Louise McGauley Betts
Seema Nanda
William W. Thompson
United States Department of Labor
200 Constitution Ave., N.W.
Washington, D.C. 20210

*/s/ Micah R. Smith*
Micah R. Smith
*Counsel for Petitioner*

# TABLE OF CONTENTS

Certificate of Interested Persons........................................................................i

Introduction .............................................................................................. 1

Argument ................................................................................................. 2

I.   The Decision Contravenes Due Process by Imposing a Penalty
Without Fair Notice................................................................................ 2

    A. The ALJ's Decision Cannot Stand as Written—and
     Thus Not at All ................................................................................ 3

    B. The Regulation Did Not Provide Fair Notice of Restrictions
     on a Second Opinion Opportunity.................................................. 6

    C. The Preamble Did Not Provide Fair Notice of Restrictions
     on a Second Opinion Opportunity.................................................. 11

    D. ExxonMobil Lacked Notice of the New, Competing
     Frameworks OSHA Implicitly Advances Now .............................. 13

II.   The Decision Fails the APA's Standard of
Reasoned Decision-Making................................................................. 16

III.   The OSH Act Does Not Authorize OSHA to Require
Recording of Mental Disorders.......................................................... 18

Conclusion .............................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Allentown MackSales & Serv., Inc. v. NLRB*,
  522 U.S. 359 (1998) ................................................................ 17, 18

*Amoco Chems. Corp.*,
  12 BL OSHC 1849, 1986 WL 53497 (No. 78-0250, 1986) ........................ 13

*Bostock v. Clayton Cnty.*,
  590 U.S. 644 (2020) .................................................................. 20

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012) ................................................................... 9

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001) ............................................................... 12, 21

*Circus Circus Casinos, Inc. v. NLRB*,
  961 F.3d 469 (D.C. Cir. 2020) ..................................................... 17

*Diamond Roofing Co. v. OSHRC*,
  528 F.2d 645 (5th Cir. 1976) ........................................................ 8

*Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Newport News
  Shipbuilding & Dry Dock Co.*,
  514 U.S. 122 (1995) .................................................................. 19

*Emp. Sols. Staffing Grp. II, LLC v. Off. of Chief Admin. Hearing Officer*,
  833 F.3d 480 (5th Cir. 2016) ............................................... 6, 8, 9, 14

*ExxonMobil Pipeline Co. v. DOT*,
  867 F.3d 564 (5th Cir. 2017) ................................................... 3, 4, 9

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) .................................................................. 18

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ............................................................ 3, 13, 14

iii

*Gates & Fox Co. v. OSHRC*,
   790 F.2d 154 (D.C. Cir. 1986) ............................................................. 3, 4

*Gen. Elec. Co. v. EPA*,
   53 F.3d 1324 (D.C. Cir. 1995) ........................................................3, 4, 10

*Hoyt v. Lane Constr. Corp.*,
   927 F.3d 287 (5th Cir. 2019), *as revised* (Aug. 23, 2019)........................... 24

*Johnson v. United States*,
   559 U.S. 133 (2010) ................................................................................. 19

*Kisor v. Wilkie*,
   588 U.S. 558 (2019) ......................................................................3, 7, 8, 9

*Louisiana v. Dep't of Energy*,
   90 F.4th 461 (5th Cir. 2024) ................................................................ 2, 7

*Matter of DeBerry*,
   945 F.3d 943 (5th Cir. 2019) ................................................................... 23

*McBoyle v. United States*,
   283 U.S. 25 (1931)................................................................................... 20

*MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.*,
   512 U.S. 218 (1994) ................................................................................. 19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ..............................................................................16, 18

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
   583 U.S. 109 (2018) ................................................................................. 19

*NFIB v. OSHA*,
   595 U.S. 109 (2022) ............................................................................22, 23

*RealPage, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
   21 F.4th 294 (5th Cir. 2021) ................................................................... 20

*S&H Riggers & Erectors, Inc. v. OSHRC*,
   659 F.2d 1273 (5th Cir. 1981)..................................................................... 3

*Sec'y of Lab., Mine Safety & Health Admin. v. Excel Mining, LLC*,
  334 F.3d 1 (D.C. Cir. 2003)........................................................... 7

*Shaw Glob. Energy Servs., Inc., Respondent.*,
  23 BL OSHC 2105 (No. 09-0555, 2012) .................................... 6

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) .................................................................. 23

*State v. Biden*,
  10 F.4th 538 (5th Cir. 2021) ................................................ 16, 17

*Sw. Airlines Co. v. Saxon*,
  596 U.S. 450 (2022) .................................................................. 19

*Taylor Diving & Salvage Co. v. Dep't of Lab.*,
  599 F.2d 622 (5th Cir. 1979) ................................................ 11, 18

*UARG v. EPA*,
  573 U.S. 302 (2014) .................................................................. 21

*United States v. Hansen*,
  599 U.S. 762 (2023) .................................................................. 20

*United States v. Koutsostamatis*,
  956 F.3d 301 (5th Cir. 2020) .................................................... 20

*United States v. Scrimgeour*,
  636 F.2d 1019 (5th Cir. 1981) ................................................... 24

*Wages and White Lion Invs., LLC v. U.S. FDA*,
  16 F.4th 1130 (5th Cir. 2021) ................................................... 17

**Statutory and Regulatory Authorities**

29 C.F.R. part 1910.................................................................... 22

29 C.F.R. § 1904.5 ...............................................................*passim*

29 C.F.R. § 1904.7 ...................................................................... 5

29 U.S.C. § 651.................................................................... 21, 22

29 U.S.C. § 655.......................................................................... 22

29 U.S.C. § 657 ....................................................................20, 21

30 U.S.C. § 842(f) ................................................................. 7

66 Fed. Reg. 5916 (Jan. 19, 2001) ....................................... 5

**Other Authorities**

Antonin Scalia and Bryan Garner,
  A Note on the Use of Dictionaries, 16 Green Bag 2d 419 ....................... 19

A. Scalia & B. Garner,
  Reading Law: The Interpretation of Legal Texts (2012).......................... 20

S. Rep. 91-1282 (1970), reprinted in 1970 U.S.C.C.A.N. 5177 ...............24, 25

Webster's Second New International Dictionary (1957)................................ 8

Webster's Third New International Dictionary (1990) ................................. 7

116 Cong. Rec. 37325 (1970), reprinted in Legislative History of
  the OSH Act of 1970 ............................................................ 24

**INTRODUCTION**

OSHA's brief does remarkably little to defend the ALJ's Decision or respond to ExxonMobil's opening brief.[1] This appeal challenges the Decision on due process and APA grounds, but OSHA's brief primarily revisits record evidence in an effort to prove that Employee 2 actually experienced work-related PTSD. That analysis is irrelevant because the governing recordkeeping regulation did not direct employers to determine for themselves whether employees have a work-related mental illness. It instead established a framework where employees may submit a qualifying opinion of a work-related mental illness and employers who question such opinions may seek a second opinion. OSHA's appeal brief largely ignores the framework that the agency itself created, which does not direct the inquiries underpinning its argument. Indeed, OSHA's brief only confirms the due process and APA failings by relying on new, competing frameworks that were not foreseeable when ExxonMobil made its recording decision, are not the product of reasoned agency decision-making, and do not form the basis of the Decision. That last point alone should be dispositive.

OSHA also attempts to rewrite the Decision by claiming the regulation is clear and complete in setting the recordkeeping obligation when an employee gives the employer a qualifying medical opinion. But the ALJ did not share that view, OSHA did not advance it in administrative proceedings, and OSHA does

---

[1] This reply brief carries forward defined terms from ExxonMobil's opening brief.

not seem to genuinely believe it now. The agency has recognized a second opinion opportunity from the inception of the recordkeeping regulation it now seeks to enforce by penalty. The fact that it cannot offer a coherent vision of how the regulation applies, even *post hoc* in litigation, only confirms ExxonMobil had no notice of the standards it is claimed to have violated. Because the Decision violates the Due Process Clause and the APA, and because the OSH Act does not authorize OSHA to require recording of mental illnesses, this Court should reverse.

## ARGUMENT

## I. The Decision Contravenes Due Process by Imposing a Penalty Without Fair Notice

OSHA's brief confirms the agency's due-process violation. While OSHA claims to rest on what "[t]he regulation plainly states," Br. 45, it in fact relies on different and conflicting recordkeeping frameworks not found in text, agency guidance, or the Decision. But "the grounds upon which an administrative order must be judged are those upon which the record discloses its action was based." *Louisiana v. Dep't of Energy*, 90 F.4th 461, 469 (5th Cir. 2024) (citation omitted). "The Supreme Court has repeatedly reaffirmed this prohibition on 'convenient litigating position[s]' and '*post hoc* rationalization[s].'" *Id.* (citations omitted). It is too late for the agency to change positions. And its attempt at that only confirms that "the agency itself struggles to provide a definitive reading of the regulatory requirements," which proves ExxonMobil was not "'on notice' of the

agency's ultimate interpretation." *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1334 (D.C. Cir. 1995), *as corrected* (June 19, 1995).

### A. The ALJ's Decision Cannot Stand as Written—and Thus Not at All

The "fundamental principle" of "fair notice," *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (*Fox II*),[2] requires that OSHA regulations be "sufficiently specific," including in how they are "applied," *S&H Riggers & Erectors, Inc. v. OSHRC*, 659 F.2d 1273, 1280 (5th Cir. 1981). When an agency imposes a penalty for alleged noncompliance with a regulation, the question is not whether an agency interpretation "might be permissible"—as it may be "in a non-penal context"—but whether "the company in fact had notice" that its conduct was unlawful. *Gates & Fox Co. v. OSHRC*, 790 F.2d 154, 156 (D.C. Cir. 1986). Even if a given set of rules are legally available to an agency, it must provide "pre-enforcement warning" that it has in fact adopted them before enforcing them by penalty. *Gen. Elec.*, 53 F.3d at 1329; *see also Kisor v. Wilkie*, 588 U.S. 558, 579 (2019) (confirming that an otherwise permissible "new interpretation" must not "create[] 'unfair surprise' to regulated parties"); *ExxonMobil Pipeline Co. v. United States Dep't of Transp.*, 867 F.3d 564, 578 (5th

---

[2] OSHA is wrong to say *Fox II* "concerns freedom of speech, not vagueness claims." Br. 49 n.27. The Court applied fair notice doctrine applicable "on any subject" and explained that "it need not address the First Amendment implications of the [FCC's] indecency policy" because it "resolves these cases on fair notice grounds." *Fox II*, 567 U.S. at 254, 258.

Cir. 2017) (finding regulated party lacked fair notice requisite to a penalty even if the agency could properly adopt the position on a prospective basis).

While the "most obvious" means to receive "notice of the agency's interpretation" is "reading the regulations," the regulations are not constitutionally sufficient in this setting unless the agency's "interpretation is 'ascertainably certain' from" them. *Gen. Elec.*, 53 F.3d at 1329–30 (citation omitted). Where penalties are at issue, "ambiguity" cuts against the agency, *ExxonMobil*, 867 F.3d at 579, as OSHA appears to concede, *see* Br. 49 n.27. Here, the Decision effectively admitted the governing regulation (29 C.F.R. § 1904.5(b)(2)(ix)) is ambiguous by acknowledging an employer's "right to obtain a second opinion"—which is addressed in the preamble, not the rule—and by explaining that neither rule nor preamble "explicitly limit" that "right." Excerpt of Record (ER) 0035. The Decision was correct on these points for reasons explained below. *See infra* § I.B.

Where a statute or regulation does not itself provide adequate notice, an agency pursuing a penalty must cite some other source of prior "warning." *Gates & Fox*, 790 F.2d at 156; *see also ExxonMobil*, 867 F.3d at 579. The ALJ claimed to find that "in letters of interpretation and other guidance documents," ER 0035, which ExxonMobil included in the addendum to its opening brief, Add. 010–038, and thoroughly discussed, Exxon.Br. 22–26. The guidance documents concern physical injuries and illnesses and do not provide notice of rules for recording mental illnesses, given the agency's long-standing position "that recording work-related mental illnesses involves several unique issues." 66

Fed. Reg. 5916, 5953 (Jan. 19, 2001). The Decision applied two principles from the cited guidance documents that do not work in the mental-health context— one principle permitting a second opinion only before the employee receives treatment or misses work and a second principle dictating that the practitioner who issues the second opinion must personally meet with the employee. A second opinion opportunity will rarely, if ever, be available under that framework as applied to mental illnesses, and this incompatibility confirms that employers would not reasonably anticipate that these documents govern in cases of alleged work-related mental illnesses.[3] Moreover, most of the guidance documents the Decision cited addressed a distinct part of OSHA's recordkeeping regulation (29 C.F.R. § 1904.7) from the one at issue here (29 C.F.R. § 1904.5), which addresses a separate step of the recordkeeping analysis (whether an injury or illness meets certain severity criteria) from the one at issue here (whether a work-related illness exists in the first instance). Exxon.Br. 24–26.

OSHA's brief does next to nothing to defend the Decision's stated rationale. OSHA makes no use of the guidance documents the Decision cites in addressing the due-process question. *See* Br. 45–49 & n.27. And, while it briefly mentions the documents, it ignores ExxonMobil's arguments about them.

---

[3] OSHA now claims these guidance documents identify no "strict rule[s]," Br. 45 n.25, but the documents frame them as strict rules, *see* Add. 031 ("once medical treatment is provided … the case is recordable"), and the Decision understood them that way, *see* ER 0037.

Br. 43–45 & nn. 22–24. The agency fails to admit that "mental illnesses" raise "unique issues," 66 Fed. Reg. at 5953, and does not explain how the guidance documents could provide notice without addressing those issues. And the agency carries forward its own (and the Decision's) conflation of physical and mental illnesses by relying only on precedents concerning physical injuries. *See, e.g.*, Br. 46–48; *Shaw Glob. Energy Servs., Inc., Respondent.*, 23 BL OSHC 2105, at *3 (No. 09-0555, 2012) (describing case of "an employee who had been hospitalized and was receiving medical treatment for mercury toxicity"). Indeed, OSHA's 12,000-word brief cites no case—ever—where it has cited a party for failure to record a mental illness. *Cf. Emp. Sols. Staffing Grp. II, LLC v. Off. of Chief Admin. Hearing Officer*, 833 F.3d 480, 489 (5th Cir. 2016) ("Apparently, neither Congress nor DHS had ever declared a bar to corporate attestation prior to this enforcement action."). Accordingly, OSHA's brief only confirms that its prior guidance documents provided no relevant information to employers faced with a mental-illness recording decision.

## B. The Regulation Did Not Provide Fair Notice

**1.** OSHA's brief principally asserts that fair notice is provided in the text of the regulation (29 C.F.R. § 1904.5(b)(2)(ix)). Br. 45–49. This is a new position. As explained above, *supra* § I.A, the Decision did not view the regulation as providing the requisite notice. ER 0035–38. OSHA did not advance this view during agency proceedings. *See* Certified List Vol. 6(59), Secretary's Post-Hearing Br. 22; *see id.* at 22–23, 26. And the agency does not appear to genuinely believe it now, as it devotes most of its briefing to arguments

that make no sense if the regulation were objectively plain in ruling out ExxonMobil's position, *see infra* § I.B.4, while repeatedly denying that it is making arguments in the alternative, *see, e.g.*, Br. 37 n.18, 43 n.21. This *post hoc* justification cannot be considered. *Louisiana v. Dep't of Energy*, <u>90 F.4th at 469</u>; *Kisor*, <u>588 U.S. at 559</u>.

**2.**     Regardless, OSHA's new argument—that the regulation binds employers to the first opinion of a work-related mental illness they receive—is incorrect. The regulation provides that a "[m]ental illness will not be considered work-related unless the employee voluntarily provides the employer with an opinion" from a qualified practitioner "stating that the employee has a mental illness that is work-related." <u>29 C.F.R. § 1904.5(b)(2)(ix)</u>. "[T]he word 'unless'" contains an "ambiguity" because it "is silent as to what" happens when the condition is met. *Sec'y of Lab., Mine Safety & Health Admin. v. Excel Mining, LLC*, <u>334 F.3d 1, 10</u> (D.C. Cir. 2003). The statute in *Excel Mining* required the Secretary of Labor to limit miners' coal-dust exposure using a measure "over a single shift only, unless the Secretary" were to find "that such single shift measurement will not … accurately represent such atmospheric conditions during such shift." *Id.* at 4 (quoting <u>30 U.S.C. § 842(f)</u>). The Secretary persuaded the D.C. Circuit that the term "unless" created ambiguity "as to what [the Secretary] must do if a finding is made." *Id.* at 10.

The D.C. Circuit's ruling makes sense because the term "unless" establishes a *necessary* condition that may not be *sufficient*. *See* Webster's Third New International Dictionary 2503 (1993) (Webster's Third) ("unless" means

"without the accompanying circumstance or condition"); *see also* Webster's Second New International Dictionary 2783 (1957) (Webster's Second) (similar). For example, to say "no one will become a judge in this state unless he or she has practiced law for five years" does not mean everyone in that state who practices law for five years becomes a judge. The statement is silent as to additional circumstances for a judgeship. Likewise, while the recordkeeping regulation is clear that an employer who does not receive a qualifying opinion has no recordkeeping obligation, it does not follow that every employer who receives such an opinion becomes subject to a conclusive recordkeeping obligation. *See Emp. Sols.*, 833 F.3d at 488 (finding no fair notice from "language" that "could be interpreted" other than how the agency read it).

OSHA's brief at some points (but not others) reads into the "unless" clause a negative inference that a qualifying opinion always creates "a duty to record." Br. 36; *see also* Br. 32–33. But the text does not compel that negative inference. As explained, it is best read to establish a condition that is necessary but not sufficient. Even if OSHA's negative inference were textually permissible, it should have announced its position before issuing a fine. *See Kisor*, 588 U.S. at 579. OSHA admits that fair notice is lacking where "the law or regulation at issue create[s] some ambiguity and there [is] a reasonable alternative reading." Br. 49 n.27. This is such a case. *See Diamond Roofing Co. v. OSHRC*, 528 F.2d 645, 649 (5th Cir. 1976) ("a regulation cannot be construed to mean what an agency intended but did not adequately express").

**3.** This case in fact presents a worse due process offense than a case of mere ambiguity because "the agency itself produced conflicting directives" that justified ExxonMobil's decision not to record. Br. 49 n.27 (conceding notice is lacking in such cases); *see ExxonMobil*, 867 F.3d at 579; *Emp. Sols.*, 833 F.3d at 489. When the agency promulgated the regulation, it spoke to the textual silence by stating in the regulation's preamble that an employer who receives a qualifying opinion may "refer the case to a physician or other licensed health care professional for a second opinion." 66 Fed. Reg. at 5953. This statement acknowledges that the regulation is incomplete. If OSHA's novel negative-inference reading were correct—and every qualifying initial opinion created a recordkeeping obligation—it would have been neither necessary nor proper for the preamble to describe a case where an employer in receipt of a qualifying opinion could still decline to record the alleged mental illness. The agency's belated denial that the regulation is incomplete, *see* Br. 46 n.26, is a "convenient litigation position," *Kisor*, 588 U.S. at 579 (citation omitted), that "conflict[s] with [its] prior interpretation" in the preamble, *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012). But the preamble was "contemporaneous" with the rule and is a better indicator of the agency's genuine position than its *post hoc* litigating position. *Kisor*, 588 U.S. at 579 (citation omitted).

Indeed, OSHA's position does not seem genuine even now. Because ExxonMobil "concede[s] [Dr. McCann] was qualified to render [her opinion] under the recordkeeping regulations," Br. 40, OSHA argues—but only at times—that Employee 2's alleged mental illness became recordable, full stop.

But OSHA's brief urges this Court to undertake new, conflicting inquiries into ExxonMobil's second opinion that would make no sense if the regulation unambiguously supported OSHA's new interpretation.

At one juncture, OSHA says the regulation turns on "factual issues" like "whether Employee 2 suffered from PTSD," Br. 37 n.18; at another, that the regulation calls for "comparing and evaluating competing expert opinions," Br. 45 n.25; at another, that an employer presented with a qualifying opinion must "record th[e] illness, unless it was otherwise established as incorrect," Br. 36–37; and at yet another, that the right to a second opinion turns on the employer's "rationales for seeking another opinion," Br. 40 n.20. None of these internally conflicting concepts for a recordkeeping framework are in the rule, and none of them make sense if the regulation is clear and complete in binding the employer to the first qualifying opinion it receives. OSHA's collection of alternate interpretations proves that "the agency itself struggles to provide a definitive reading of the regulatory requirements."[4] *Gen. Elec. Co.*, 53 F.3d at 1334; *see infra* § I.D.

---

[4] OSHA's burden-shifting framework is especially incoherent. *See* Br. 36–37. The agency claims the term "unless" generally establishes a system where "it [is] the employer's burden to prove" the relevant fact. Br. 37 (citation omitted). But the regulation says a mental illness "will *not* be considered work-related unless the *employee*" satisfies a burden. 29 C.F.R. § 1904.5(b)(2)(ix) (emphasis added). Why would the burden fall on the *employer*?

## C. The Preamble Did Not Provide Fair Notice of Restrictions on a Second Opinion Opportunity

OSHA also looks to the preamble, Br. 47, but the preamble supports ExxonMobil. As noted, the preamble authorizes an employer receiving a qualifying opinion to "refer the case to a physician or other licensed health care professional for a second opinion." 66 Fed. Reg. at 5953. That is what ExxonMobil did. *See* Exxon.Br. 17–18. Nothing in the preamble's directive supports an inquiry by an ALJ with the benefit of hindsight into "factual issues" like "whether Employee 2 suffered from PTSD," Br. 37 n.18, a process "comparing and evaluating competing expert opinions," Br. 45 n.25, a duty to "record th[e] illness, unless it was otherwise established as incorrect," Br. 36–37, or a requirement to provide certain "rationales for seeking another opinion," Br. 40 n.20. If the preamble is clear, it is clear in permitting an employer to rely on a second opinion that conflicts with the opinion provided by the employee's medical provider, as the ALJ understood.[5] ER 0035.

OSHA contends that "the preamble text gives employers fair warning that the regulations do not countenance unbridled opinion-seeking until the employer obtains an opinion it likes" by way of "third, fourth, unlimited, etc."

---

[5] Where the preamble arguably exhibits ambiguity of its own is in failing to identify what occurs if a second opinion conflicts with the first, but that can only doom OSHA's claim of "fair warning" in the preamble. Br. 47. By comparison, OSHA has shown it can craft a rule that accounts for this type of problem by calling for a third opinion to decide between competing first and second opinions. *See Taylor Diving & Salvage Co. v. Dep't of Lab.*, 599 F.2d 622, 623 (5th Cir. 1979).

opinion. Br. 47. But ExxonMobil did not seek a "third" or "fourth" or "unlimited" opinions. The ALJ recognized that the opinion of Dr. Joppich was a "*second* opinion" and dismissed it only because it was not "authoritative" under a novel framework that OSHA does not meaningfully defend—not because it was a third or fourth opinion. ER 0037 (emphasis added).

In referencing third and fourth opinions, OSHA is counting the opinions at least of Adams-Ordonio and Brown, in addition to that of Dr. McCann, but those are opinions Employee 2 sought, not opinions ExxonMobil sought. *See* Br. 11–15; Br. 40 (noting these were opinions ExxonMobil "received from Employee 2"). The preamble states that "the *employer* may refer the case … for a second opinion." 66 Fed. Reg. at 5953 (emphasis added). The first and only referral ExxonMobil made was to Dr. Joppich; this is not a case of "unbridled opinion-seeking." Br. 47. If OSHA now reads the preamble to enable employees to eliminate the second-opinion opportunity by obtaining more than one opinion, that is yet another new framework applied without notice and another *post hoc* justification absent from the Decision itself.[6]

_____

[6] OSHA errs in relying on the opinions of Adams-Ordonio and Brown. Br. 34–35. OSHA does not dispute ExxonMobil's argument, Exon.Br. 37 n.12, that licensed clinical social workers are not the functional equivalent of "psychiatrist, psychologist, [or] psychiatric nurse practitioner." 29 C.F.R. § 1904.5(b)(2)(ix). Instead, OSHA insists that ExxonMobil's legal position "would 'effectively write the 'etc.' providers out of the standard.'" Br. 35 (citation omitted). Not so. The word "etc." requires that non-enumerated items be "similar in nature to" enumerated items. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (*ejusdem generis* canon). While the term "etc." expands the list beyond enumerated items, they must still be like enumerated items. The Decision's

### D. ExxonMobil Lacked Notice of the New, Competing Frameworks OSHA Implicitly Advances Now

OSHA spends most of its brief attempting to persuade the Court that Employee 2 actually suffered from PTSD and that Dr. Joppich's opinion was less persuasive than competing opinions. *See* Br. 36–39. These arguments do not address, and only exacerbate, the problem of "fair notice." *Fox II*, 567 U.S. at 253.

Neither regulation, nor preamble, nor agency guidance directs employers to resolve "clearly factual issues" like whether alleged mental illnesses truly exist and are work-related, Br. 37 n.18, or which of "competing expert opinions" is most persuasive, Br. 45. In fact, the agency affirmatively *rejected* these potential approaches because of "unique issues" that mental illnesses raise, such as "the difficulty of detecting, diagnosing and verifying mental illnesses." 66 Fed. Reg. at 5953. OSHA did not want an inquiry that turned on whether an ALJ might find—in hindsight after a trial—that an employer's choice not to record rested on "weak factual underpinnings." Br. 42. When promulgating the regulation, OSHA instead devised a framework tied to an initial "opinion from [a] health care professional" and "a second opinion" the employer may obtain. *Id.*; *cf. Amoco Chems. Corp.*, 12 BL OSHC 1849, 1986 WL 53497, at *7 (No. 78-0250, 1986) (interpreting superseded regulation addressing only physical injuries not to require that "every employer must exercise the same medical judgment as the

---

contrary view was legally erroneous, but the Court need not address the issue because the number of opinions Employee 2 obtained is not a material fact under the legal framework of which ExxonMobil had fair notice. Exxon.Br. 37 & n.12.

best qualified experts in the nation"). ExxonMobil had notice of that framework, nothing more, and it reasonably understood that a second opinion finding insufficient evidence of a work-related mental illness negated any recordkeeping obligation.

Like the ALJ, OSHA resists this basic point by expressing disdain for an "unlimited" second opinion opportunity. Br. 39 (quoting ER 0035). Insofar as OSHA argues against third and fourth opinions, the point is immaterial because ExxonMobil sought only one second opinion. *See supra* § I.C. Insofar as OSHA means that additional limitations should restrict an employer's reliance on a second opinion—as the ALJ found—OSHA criticizes its own handiwork. It could have drafted the rule differently or provided proper guidance announcing limits but did not. A perceived need for a limit to the second opinion rule does not justify imposing it through a penalty without advance notice. Exxon.Br. 20. By analogy, it seems obvious that some rule should exist to prohibit network television stations from broadcasting nudity in prime time. *Fox II*, <u>567 U.S. at 247</u>–48. But a broadcast is not illegal merely because it should be illegal. *Fox II* held that the only way to prohibit such broadcasts was through advance notice and that a fine without such notice was unconstitutional. So too here.

It is for the same reason improper for OSHA to wish away constitutional command by relabeling as "factual issues" what are in truth "legal issues." Br. 37 n.18. The fair-notice question is one of law, not fact. *Emp. Sols.*, <u>833 F.3d at 484</u>. And OSHA's factual contentions are irrelevant under the framework ascertainable from regulation and preamble. The agency's heavy reliance on

information adduced at trial—more than eighteen months after ExxonMobil made its recordkeeping decision—confirms the problem with viewing the recordkeeping question in hindsight. *See* Br. 37–39, 41–43. For example, OSHA relies heavily on "testimony of Employee 2," Br. 37, which ExxonMobil did not have when it made its recordkeeping decision because Employee 2 provided very little information to the company in the wake of the fire, Hr'g Tr. Vol. III 725–26, 817–18. OSHA also relies on concessions by Dr. Joppich on cross-examination (e.g., that she did not consider her second opinion "sufficient," given Employee 2's refusal to meet with her, Br. 42 (citation omitted)), but ExxonMobil did not have such concessions in hand when it made its decision. OSHA's implicit view that an employer is responsible for information the employee never provided necessarily affords employees a unilateral veto power over employers' second-opinion right.[7] *See* Exxon.Br. 29. Even OSHA's own cited authority—concerning *physical* injuries in a *prior* rule—holds that a recordkeeping decision can be assessed only based on information the employer had, not on information it lacked. *See Amoco*, <u>1986 WL 53497</u>, at *4, 7; Br. 48. Because OSHA can find no authority providing fair notice regarding *mental* illnesses under the *existing* rule, ExxonMobil lacked notice that its recordkeeping

---

[7] OSHA is incorrect in suggesting that ExxonMobil provided incomplete or inaccurate information to Dr. Joppich. Br. 41. ExxonMobil provided all information in its possession, Hr'g Tr. Vol. III 781, and subsequent factual development reflects advancement in information ExxonMobil also did not have. Notably, the ALJ did not find, as OSHA now states, that "Dr. Joppich did not have a full or accurate picture of Employee 2's work history or the triggering event." Br. 41; *see* ER 0039–41.

decision might be deemed unlawful on the grounds OSHA now presents in hindsight.

## II. The Decision Fails the APA's Standard of Reasoned Decision-Making

OSHA's brief confirms the agency's failures under the APA. Courts "must set aside any action premised on reasoning that fails to account for 'relevant factors,'" *State v. Biden*, 10 F.4th 538, 552 (5th Cir. 2021) (citation omitted), or "failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). ExxonMobil demonstrated that the Decision fashioned standards without addressing any of the obvious factors related to the recording of mental illnesses—including factors OSHA itself identified as relevant to mental illnesses—and that the resulting framework is incompatible with a second-opinion opportunity. Exxon.Br. 28–33.

OSHA dismissively responds in an underdeveloped footnote, quipping that it "has never articulated a right to seek unlimited 'second' opinions." Br. 43 n.21. But an agency's professed need for limits begs the question of what they should be.[8] Neither OSHA nor OSHRC has ever identified limits applicable to second opinions in mental-illness cases. OSHA *has* identified "several unique issues" related to the recording of mental illnesses, "including the difficulty of detecting, diagnosing and verifying mental illnesses; and the sensitivity and

---

[8] As discussed above, the ALJ did not find that ExxonMobil sought a third or fourth opinion, only a second opinion.

privacy concerns raised by mental illnesses." 66 Fed. Reg. at 5953. It follows that, in fashioning limits, the agency had to account for these "relevant factors." *State v. Biden*, 10 F.4th at 552 (citation omitted). After all, "adjudication is subject to the requirement of reasoned decisionmaking," *Allentown MackSales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998), which is "the same standard of reasonableness as [governs] notice and comment rulemaking," *Wages and White Lion Invs., LLC v. U.S. FDA*, 16 F.4th 1130, 1140 (5th Cir. 2021) (quoting *Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469, 476 (D.C. Cir. 2020)). An agency must justify "a rule of primary conduct" applied in adjudication. *Allentown MackSales*, 522 U.S. at 374. The Decision does not do this. Simply relying on authorities concerning physical injuries and illnesses was "conclusory, unsupported, and thus wholly insufficient." *Wages & White Lion Invs.*, 16 F.4th at 1137. No amount of "length[]" and "detail[]" in the ruling, Br. 43 n.21, can overcome this flaw.

The agency's shift on appeal away from the Decision's rationales only confirms that the agency failed the reasoned decision-making standard when it took action against ExxonMobil. For one, OSHA "cannot cure th[e] deficiencies by offering *post hoc* rationalizations before our court." *Wages & White Lion*, 16 F.4th at 1140; *see supra* § I. For another, to select among the many standards in OSHA's brief, the agency would need a process of reasoned decision-making that never occurred. For OSHA to require that an employer resolve "factual issues" like "whether Employee 2 suffered from PTSD," Br. 37 n.18, is not the same as to require "comparing and evaluating competing expert opinions,"

Br. 45 n.25, which in turn is not the same as a burden to "record th[e] illness, unless it was otherwise established as incorrect," Br. 36–37, and which is not the same as to demand "rationales for seeking another opinion," Br. 40 n.20. And all these standards differ from those the ALJ imposed. ER 0035–38.

Under the APA, the agency must *pick* one standard and say why it rejected alternatives. *See State Farm*, 463 U.S. at 48 (describing the requirement to address an "alternative way of achieving the [agency's] objectives"). Casually referencing different concepts does not work. *See Allentown Mack*, 522 U.S. at 374 ("It is hard to imagine a more violent breach of th[e] [reasoned decision-making] requirement than applying a rule of primary conduct … which is in fact different from the rule or standard formally announced."). And, because OSHA has departed from its prior position that the regulation's text is incomplete, *see* 66 Fed. Reg. at 5953, through its new position that recording is mandated every time an employer receives a qualifying opinion, OSHA must explain its change of course, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (*Fox I*); Br. 34. The agency has never done so.

### III. The OSH Act Does Not Authorize OSHA to Require Recording of Mental Disorders

OSHA's recordkeeping regulation cannot be applied in any event because it exceeds the agency's statutory authority. *Cf. Taylor Diving*, 599 F.2d at 625 (finding no statutory authority for OSHA regulation that bound employers to a third professional opinion in the event of conflict between two prior opinions). Statutory interpretation "begins with the statutory text, and ends there as well"

if the text is "unambiguous." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) (citation omitted). ExxonMobil provided a thorough textual analysis, taking all key terms in context. Exxon.Br. 37–43. In response, OSHA cites a single dictionary definition and then promptly jumps to "legislative history," Br. 25, and "overarching purpose," Br. 30. That is a tell-tale sign of weakness. *See Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 135 (1995) (describing "the proposition that the statute at hand should be liberally construed to achieve its purposes" as "that last redoubt of losing causes").

1.   OSHA's limited textual argument stands predominantly on "a contemporaneous dictionary definition" that "includes" the word "mind" in the meaning of "illness." Br. 24 (citing Webster's Third 1127 (1961)).[9] But "words must be read and interpreted in their context, not in isolation." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (cleaned up). "Ultimately, context determines meaning." *Johnson v. United States*, 559 U.S. 133, 139 (2010). Just because illness

_____

[9] One weakness in this point is that Webster's Third is "to be used cautiously because of its frequent inclusion of doubtful, slipshod meanings without adequate usage notes." Antonin Scalia and Bryan Garner, A Note on the Use of Dictionaries, 16 Green Bag 2d 419, 427, https://www.greenbag.org/v16n4/v16n4_articles_scalia_and_garner.pdf (visited 9/6/2025). "Webster's Third was widely criticized for its portrayal of common error as proper usage," and "intentional distortions." *MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 228 n.3 (1994). OSHA's exclusive use of Webster's Third for contemporaneous meaning is incautious. By comparison, ExxonMobil noted the definition of Webster's Third but also showed that Webster's Second in 1957 and the Oxford English Dictionary in 1989 reported meanings of "illness" that refer only to bodily deficiencies. Exxon.Br. 38.

can mean a mental illness does not mean it does here. "When words have several plausible definitions, context differentiates among them," *United States v. Hansen*, 599 U.S. 762, 775 (2023), as where the statutory context surrounding the term "vehicle"—which all dictionaries would define broadly enough to include aircraft—indicated that it "included only things 'moving on land,' not airplanes too," *Bostock v. Clayton County*, 590 U.S. 644, 675 (2020) (discussing *McBoyle v. United States*, 283 U.S. 25, 26 (1931)); *see also RealPage, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 21 F.4th 294, 299 (5th Cir. 2021) (privileging contextually sound meaning over "an amalgam of selective dictionary definitions").

The starting point is "a word's immediate syntactical setting—that is, the words that surround it in a specific utterance." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 33 (2012). ExxonMobil examined syntax, Exxon.Br. 38–40, and OSHA has no real response. It declares that the text "contains no distinction between physical and mental illness." Br. 24. But every cue surrounding the word "illnesses" indicates a physical, not mental, meaning. OSHA does not say how references to "first aid treatment," "restriction of work or motion," and "loss of consciousness" can refer to mental illnesses. 29 U.S.C. § 657(c)(2).

OSHA also ignores that Congress used the joint term "injuries and illnesses" and does not deny that "injuries" is a decidedly physical term. Exxon.Br. 38–39. This is significant because "a word may be known by the company it keeps," *United States v. Koutsostamatis*, 956 F.3d 301, 307 (5th Cir. 2020) (citation omitted), and because the statute treats the terms

"injuries and illnesses" interchangeably, using the term "injuries" to refer back to both terms:

> The Secretary … shall prescribe regulations requiring employers to maintain accurate records of … *injuries and illnesses* other than minor *injuries* requiring only first aid treatment….

29 U.S.C. § 657(c)(2) (emphasis added). The statute, then, must mean only illnesses "similar in nature to" injuries, *Circuit City*, 532 U.S. at 115, i.e., physical ones. The same statutory subsection confirms this by using "illnesses" as a near-synonym of "accidents." 29 U.S.C. § 657(c)(2) (authorizing regulations for "developing information regarding the causes and prevention of occupational accidents and illnesses").

Further, the recordkeeping authorization is located in § 8 of the OSH Act, which establishes an inspection framework for assessment of "all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials." *Id.* § 657(a)(2); *see also* Br. 4 ("OSHA enforces the Act by inspecting workplaces and issuing a citation"). OSHA does not say how recording mental illnesses could relate to that inspection framework. Indeed, OSHA can find no textual indicator within § 8 itself—aside from the word "illnesses" taken in isolation—supporting its reading.

**2.** Plucking out more isolated words, OSHA notes the term "psychological factors" in the congressional statement of purposes. 29 U.S.C. § 651(b)(5); Br. 30–31. That is no substitute for a holistic review of "the design and structure of the statute as a whole," *UARG v. EPA*, 573 U.S. 302, 321 (2014)

(citation omitted), which ExxonMobil analyzed, Exxon.Br. 40–41, and OSHA largely ignores. OSHA does not dispute that its core mission of setting "occupational safety or health standard[s]," 29 U.S.C. § 655(b), does not include authority to set mental-illness regulations and that none of OSHA's hundreds of regulations address mental illnesses, *see* 29 C.F.R. part 1910. Nor does OSHA meaningfully deny that "[j]ob stress," 66 Fed. Reg. at 5952, is "not an occupational hazard" within the meaning of the OSH Act, *NFIB v. OSHA*, 595 U.S. 109, 118 (2022) (emphasis omitted). OSHA does not explain how the reference to "injuries and illnesses" in part (2) of subsection (c) of § 8 can have a meaning different from the meaning of injuries, illnesses, health, and safety elsewhere in the OSHA Act.

Contrary to OSHA's arguments, the term "psychological factors" does not provide the agency *carte blanche* to regulate mental health. The term addresses research, not regulatory power, and is twice contextualized by the term "occupational safety and health." *See* 29 U.S.C. § 651(b)(5) ("research in the field of *occupational safety and health*, including the psychological factors involved, and by developing innovative methods, techniques, and approaches for dealing with *occupational safety and health* problems" (emphasis added)). Again, OSHA has never read the phrase "occupational safety and health" to include mental health. Accordingly, the vague reference to the "research" of "psychological factors" must refer to those "involved" in "occupational safety and health," *id.*, such as the "mental phenomena," Webster's Third 1833 ("psychological"), that cause or contribute to workplace accidents. OSHA's contrary, open-ended

reading would transform these two words into an unlimited power to regulate working hours, workspace lighting, job site architecture, supervisor behavior, employee promotion systems, and everything else in workplaces because those factors contribute to "depression and anxiety." 66 Fed. Reg. at 5952. Mental disorders present a "universal risk … no different from the day-to-day dangers that all face" in a variety of contexts. *NFIB*, 595 U.S. at 118. OSHA is unpersuasive in denying that its claim of authority here is different from that rejected in *NFIB*. Br. 31 n.13.

OSHA supplies no evidence that it mandated recording of mental illnesses before 2001. ExxonMobil acknowledged that the 2001 preamble claims OSHA had previously imposed such obligations but demonstrated this to be a likely error, citing federal register materials for the original rule and precedent quoting prior obligations. *See* Exxon.Br. 5–6 n.1, 41. This invited OSHA to present contrary evidence. But OSHA merely parrots the 2001 preamble and provides no back-up support for its assertion. *See* Br. 27–28. If such regulations existed, the agency should have been able to find them. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (noting that persuasiveness of agency interpretation of statute turns in part on whether it is consistent with agency's "earlier" views).

**3.** OSHA stands mainly on legislative history. Br. 25–26. The Court should be "reluctant to rely on legislative history for the simple reason that it's not law." *Matter of DeBerry*, 945 F.3d 943, 949 (5th Cir. 2019). Besides, OSHA cites nothing in the legislative history stating that the recordkeeping requirements should or would extend to mental illnesses. The Senate Report's

discussion of the recordkeeping requirement cuts against OSHA by using the term "work-related injuries or ailments" to describe the scope of § 8(c). S. Rep. 91-1282, at 16-17 (1970), reprinted in 1970 U.S.C.C.A.N. 5177, 5193. OSHA's preferred dictionary defines "ailment" to mean "a bodily sickness." Webster's Third 45; *see United States v. Scrimgeour*, 636 F.2d 1019, 1023 (5th Cir. 1981) (noting probative use of legislative history "in determine[ing] [] the meaning of words used in statutes").

Rather than address what the legislative history says about the section at issue, OSHA employs the discredited method of "looking over a crowd and picking out your friends." *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019), *as revised* (Aug. 23, 2019) (cleaned up). And OSHA finds no friends. For example, a floor speech OSHA selectively quotes, Br. 25, of Senator Williams noted that "many" of the "[p]esticides and fungicides used in the agricultural industry have a chemical similarity to commonly used agents of chemical and biological warfare," which "has caused fever, nausea, convulsions, long-term psychological effects, and death." 116 Cong. Rec. 37325 (1970), reprinted in Legislative History of the OSH Act of 1970, at 413. The concern here is psychological effects of physical injuries, not mental illnesses separate from physical injuries and illnesses. OSHA also cites "one document *referred to* during" legislative hearings, Br. 25 (emphasis added)—with no evidence that Congress meant to adopt the definition within that document— and a section on "research projects" to be "conducted directly or through grants," *see id.* (quoting S. Rep. No. 91-1282, at 20, reprinted in 1970

U.S.C.C.A.N. 5177, 5197), which has no relevance to this case. These weak appeals to legislative history are in themselves evidence that OSHA has no solid textual foundation for its position.

## CONCLUSION

The Court should grant the petition for review and reverse the citation.

Dated: September 22, 2025

Respectfully submitted,

*/s/ Micah R. Smith*
MICAH R. SMITH
RICHARD B. RAILE
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1638
msmith@bakerlaw.com

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I certify that on September 22, 2025, I filed the foregoing with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

/s/ Micah R. Smith
Micah R. Smith
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.,
Suite 1100
Washington, D.C. 20036
(202) 861-1638
msmith@bakerlaw.com

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,499 words according to the count of Microsoft Word. I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Calisto MT.

Dated: September 22, 2025

*/s/ Micah R. Smith*
Micah R. Smith
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.,
Suite 1100
Washington, D.C. 20036
(202) 861-1638
msmith@bakerlaw.com